# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

In the matter of: )
)                    Adversary Proceeding
CHRISTOPHER JOHN WALTER )
(Chapter 7 Case Number 09-41157) )                    Number 10-4014
)
*Debtor* )
)
)
CHRISTOPHER JOHN WALTER )
)                    **FILED**
*Plaintiff* )            Lucinda B. Rauback, Acting Clerk
)                    United States Bankruptcy Court
)                    Savannah, Georgia
)                    *By lbarnard at 12:39 pm, Oct 16, 2012*
v. )
)
DEUTSCHE BANK NATIONAL )
   TRUST COMPANY, )
ONE WEST BANK, F.S.B., )
MORTGAGE ELECTRONIC )
   REGISTRATION SYSTEMS, INC., )
and RBC BANK )
)
*Defendants* )

## OPINION AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Debtor filed his Chapter 7 case on June 1, 2009. Dckt. No. 1.[1] Debtor

initiated this adversary proceeding on February 23, 2010. A.P. Dckt. No. 1. Currently

pending before the Court is Deutsche Bank National Trust Company, One West Bank,

---

[1]For this Order, citations to the main bankruptcy case [09-41157] will appear as "Dckt. No. ___";
citations to the Debtor's Adversary Proceeding [10-04014] will appear as "A.P. Dckt. No. ___".

F.S.B., Mortgage Electronic Registration Systems, Inc., and RBC Bank's (collectively "Defendants") Motion for Summary Judgment (the "Motion") filed on August 7, 2012. A.P. Dckt. No. 93. In response to the Motion, Debtor (hereinafter "Plaintiff") filed his Objection to Defendants' Motion for Summary Judgment on August 10, 2012. A.P. Dckt. No. 96. On September 17, 2012, Debtor filed his Response to Defendants' Statement of Facts and Plaintiff's Genuine Disputes Over Material Facts in Opposition to Defendants' Motion for Summary Judgment (A.P. Dckt. No. 107) and his Memorandum of Law in Support of Response and Objection to Defendants' Motion for Summary Judgment. A.P. Dckt. No. 109. Defendants filed their Response to Plaintiff's Genuine Dispute Over Material Facts on October 9, 2012. A.P. Dckt. No. 113. Having reviewed the record in this matter, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

In 2005, Plaintiff acquired certain real property located in Chatham County, Georgia (the "Property"), and has resided in the Property since that time. Complaint, A.P. Dckt. No. 1. On or about July 28, 2005, Plaintiff executed and delivered a Deed to Secure Debt ("1st MERS Security Deed") granting Defendant Mortgage Electronic Registration Systems ("MERS") a security interest in the Property. A.P. Dckt. No. 1-1. Plaintiff executed and delivered an Equity Line of Credit Deed to Secure Debt to RBC Centura on or about October 20, 2005, granting a security interest in Plaintiff's Property. A.P. Dckt. No. 1-2. The 1st MERS Security Deed was cancelled on June 22, 2007. A.P. Dckt. No. 1-5.

On or about April 20, 2007, Plaintiff executed and delivered a Promissory Note (the "Note") payable to IndyMac Bank, F.S.B. ("IndyMac"), in the principal amount of $411,000.00. A.P. Dckt. No. 1-3. The Note was endorsed in blank. Id. Also on April 20, 2007, to secure the indebtedness evidenced by the Note, Plaintiff executed a Security Deed naming MERS as grantee and nominee for IndyMac and its successors and assigns ("2nd MERS Security Deed"), conveying a security interest in the Property. A.P. Dckt. No. 1-4. The 2nd MERS Security Deed was recorded on May 8, 2007. Id.

IndyMac entered into a Pooling and Servicing Agreement ("PSA"), dated May 1, 2007, with Deutsche Bank National Company ("Deutsche") as trustee, providing for the issuance of IndyMac's INDX Mortgage Loan Trust 2007-AR13, Mortgage Pass-Through Certificates, Series 2007-AR13. Pooling & Servicing Agreement, A.P. Dckt. No. 109-1. The PSA designated IndyMac as Servicer. Id.

On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision and placed into Federal Deposit Insurance Corporation ("FDIC") receivership. Boyle Affidavit, A.P. Dckt. No. 93-3 at 5. IndyMac's assets were transferred to IndyMac Federal Bank ("IndyMac Federal"), and on March 19, 2009, the FDIC placed IndyMac Federal into FDIC receivership. Id. The FDIC then sold substantially all of IndyMac Federal's assets to Defendant OneWest. Id. at 5-6. OneWest is the current Servicer of the subject loan by virtue of its acquisition of IndyMac loans. See Complaint, A.P. Dckt. No. 1; see also Servicing Notice, A.P. Dckt. No. 48-2.

On May 19, 2009, MERS executed an Assignment of Note and Security Deed to assign the Note and 2nd MERS Security Deed to IndyMac Federal. MERS Assignment, A.P. Dckt. No. 1-6. This assignment was recorded on June 1, 2009. Id. Later on June 1, 2009, Plaintiff filed his Chapter 7 case. Dckt. No. 1. On February 24, 2010, the FDIC as receiver for IndyMac Federal assigned the Security Deed and "also the indebtedness described in said Deed" to Deutsche under the PSA. FDIC Assignment, A.P. Dckt. No. 93-7.

Amidst all of these assignments, Plaintiff sought information regarding his loan under the Real Estate Settlement and Procedures Act of 1974 ("RESPA"). Plaintiff asserts that he and his attorney, Murphy Cooper ("Cooper") of Georgia Legal Services ("GLS"), together have sent the Defendants a total of five letters that constitute Qualified Written Requests ("QWR") within the meaning of 12 U.S.C. § 2605(e)(1)(B). Plaintiff's Memorandum in Support of Objection, A.P. Dckt. No. 109 at 9-12; see also A.P. Dckt. No. 107-2, Exh. A-E. Plaintiff contends that Defendants' alleged failure to respond to the QWRs caused Plaintiff to suffer damages. Four of these letters were sent prepetition, on February 17, 2009, March 1, 2009, April 14, 2009, and April 21, 2009. A.P. Dckt. No. 107-2, Exh. A-D. One was sent postpetition on July 27, 2009. A.P. Dckt. No. 107-2, Exh. E.

Defendant One West (including its D/B/A IndyMac Mortgage Services) states that it did not receive any other document sent pursuant to RESPA or that identified itself as a QWR from or on behalf of Plaintiff besides the July 27, 2009 correspondence from Cooper. Boyle Affidavit, A.P. Dckt. No. 93-3 at 7; A.P. Dckt. No. 113 at 37. Also, OneWest

argues that it responded adequately to the QWR, explaining that on August 3, 2009, OneWest sent correspondence to GLS in response to the July 27, 2009 letter seeking authorization from Plaintiff to release sensitive loan information to a third party (the "Authorization Form"). Boyle Affidavit, A.P. Dckt. No. 93-3 at 6-7. OneWest had also sent two prior Authorization Forms to GLS pertaining to this loan on May 1, 2009 and May 7, 2009. A.P. Dckt. Nos. 93-8, 88-4, 88-5.

Defendants now move for an Order granting summary judgment against Plaintiff. A.P. Dckt. No. 93.

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56(b), made applicable to adversary proceedings by Bankruptcy Rule 7056, governs Motions for Summary Judgment. The moving party bears the burden to prove that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A court may grant summary judgment "where the material facts concerning a claim cannot reasonably be disputed." Schechter v. Ga. St. U., 341 Fed.Appx. 560, 563 (11th Cir. 2009) (per curiam) (quoting Garvie v. City of Ft. Walton Beach, 366 F.3d 1186, 1190 (11th Cir. 2004)). In determining whether the movant has met its burden, the Court must examine the evidence and make all reasonable inferences in favor of the opponent. *In re* Pony Express Delivery Services, Inc., 440 F.3d 1296, 1300 (11th Cir. 2006).

The essence of the relief sought by Plaintiff is (1) the avoidance of the MERS assignment to IndyMac as a voidable preference under 11 U.S.C. § 547, and (2) damages for Defendants' alleged violations of RESPA, arising out of Qualified Written Requests made by or on behalf of Plaintiff.

## I. Preference Action

Defendants move for summary judgment as to Plaintiff's Avoidance and Recovery of Preferential Transfer claim. Plaintiff's claim asserts that the assignment of the Note and Security Deed from MERS to IndyMac Federal, which occurred on the petition date, should be avoided as a preferential transfer under 11 U.S.C. § 547(b). If successful, Plaintiff contends that the avoidance action would make ineffective not only the MERS Assignment, but also the assignment from FDIC, as receiver for IndyMac Federal, to Deutsche. Plaintiff's Memorandum in Support of Objection, A.P. Dckt. No. 109 at 22. Plaintiff argues that if the assignment from MERS to IndyMac Federal is ineffective, then "it follows that the Assignment from IndyMac Federal to Deutsche dated February 24, 2010 and recorded March 8, 2010, would be ineffective as well since IndyMac would have had nothing to assign to Deutsche." Id.

Conversely, Defendants argue that Plaintiff's avoidance action is barred as a matter of law because Plaintiff cannot establish that the disputed assignment of the Security Deed conveyed during the relevant preference period involves any interest belonging to the Debtor. Defendants' Memorandum in Support of Motion for Summary Judgment, A.P. Dckt.

AO 72A
(Rev. 8/82)

No. 93 at 1. Further, Defendants contend that because Plaintiff has filed no separate avoidance claim as to the post-petition transfer from the FDIC to Deutsche, this subsequent conveyance is "entirely irrelevant and immaterial." A.P. Dckt. No. 113 at 33-34.

11 U.S.C. § 547(b) states, in relevant part:

[T]he trustee may avoid any transfer *of an interest of the debtor* in property–

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made–

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). Defendants argue that the 2nd MERS Security Deed

AO 72A
(Rev. 8/82)

was properly perfected in 2007, and therefore Debtor's interest in the Property was "transferred" within the meaning of § 547,[2] nearly two years before the preference period. Defendants contend that the June 1, 2009 transfer from MERS to IndyMac Federal did not involve an "interest of the debtor" because Debtor had already granted an absolute conveyance of his interest to MERS when he initially executed the 2nd MERS Security Deed in 2007.

Plaintiff argues that the assignment of the security interest on June 1, 2009, from MERS to IndyMac Federal is the relevant transfer. Plaintiff asserts that this assignment qualifies as a transfer that involves an "interest of the debtor" because the effect of avoiding the MERS Assignment to IndyMac Federal would be to render the later assignment to Deutsche ineffective. Plaintiff asserts that after both of those assignments are avoided, Deutsche's claim would be converted from a secured claim to an unsecured claim against the estate.

Plaintiff's argument is circular and wholly without merit. Debtor's interest in the property was transferred within the meaning of § 547 when the Security Deed was filed for record in May 2007. The transfer that occurred June 1, 2009, was not a transfer of an

---

[2] A transfer is made for purposes of § 547 "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection c(3)(B); at the time such transfer is perfected if such transfer is perfected after such 30 days; or immediately before the date of the filing of the petition, if such transfer is not perfected at the later of the commencement of the case; or 30 days after such transfer takes effect between the transferor and the transferee." 11 U.S.C. § 547(e)(2). "Under Georgia law, the 'date on which a security deed becomes effective against a bona fide purchaser is the date on which it is filed, not the date on which it was recorded.'" *In re* Norsworthy, 373 B.R. 194, 198-99 (Bankr. N.D. Ga. 2007) (citing GA. CODE. ANN. 44-2-2(b)).

AO 72A
(Rev. 8/82)

interest in property *of the Debtor* because Debtor had already made an absolute conveyance of his interest, with the right reserved to have the interest in the property reconveyed to him upon the payment of debt. *Cf. In re* Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999) ("[T]he assignment of the mortgage, once the original grant by the mortgagor to the mortgagee has been perfected, does not involve a 'transfer of the property of the debtor' that would activate the Trustee's strong-arm powers under § 544."); *see also In re* Corley, 447 B.R. 375 (Bankr. S.D. Ga. 2011) (Davis, J.) (Because debtors' only interests in the property were the right of possession and the right to have the property secured by the Security Deed reconveyed upon repayment, they had no interest in the property at the time of any post-petition transfer).

The Court reaffirms its holding in Corley, and notes that contrary to Plaintiff's supplemental argument that the Note and Security Deed were split so as to make the security interest ineffective, under Georgia law, the Note and Security Deed were not split. *See* Corley, 447 B.R. at 385 (dismissing trustee's argument that note and security deed were split, rendering the note unsecured, where MERS was named grantee and nominee for the lender and lender's successors and assigns in the Security Deed); *see also* GA. CODE. ANN. § 10-3-1 (the transfer of a secured note conveys to the transferee the benefit of the security as well); GA. CODE. ANN. § 44-14-64(b) (the transfer of a deed to secure debt transfers the accompanying indebtedness with it). Plaintiff's action is another in series of unsuccessful attacks on the MERS system. Other holdings have roundly rejected these

multiple challenges.[3]

Furthermore, as Plaintiff points out in his Objection to the Motion for Summary Judgment, "property of the debtor" subject to the preferential transfer provision is property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. Begier v. IRS, 496 U.S. 53, 58 (1990). Here, had the transfer of the Security Deed not occurred, MERS would hold the interest in the Security Deed. Under Georgia law, a deed to secure debt is governed by its terms. GA. CODE. ANN. § 44-14-60. In the Security Deed, MERS is named grantee of the Security Deed and nominee for the note holder, IndyMac, and its successors and assigns. Security Deed, A.P. Dckt. No. 1-4. IndyMac's successors and assigns can clearly be traced through the record in this case. Plaintiff argues that avoiding the MERS Assignment would make ineffective the transfer from the FDIC, as receiver for IndyMac Federal, to Deutsche, and render Deutsche's claim

---

[3]Beyond Corley, courts have upheld the validity of a lender's assignee's security interest despite the fact that MERS is named as grantee on the security deed. Joseph v. CitiMortgage, 2011 WL 5156817 at *2 (N.D. Ga. October 27, 2011); Morgan v. Ocwen Loan Servicing, LLC, 795 F.Supp.2d 1370, 1375 (N.D. Ga. 2011) ("Several of Plaintiff's claims rest on the argument that the security deed is void because of the fact that MERS was named as the grantee-as-nominee in the security deed rather than Guarantee Rate, the actual lender and payee on the note. This argument is unsupported by Georgia law.") (emphasis in original); Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1044 (9th Cir. 2011) ("[T]he notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lender."). The Eleventh Circuit affirmed a district court's finding that a security deed granted MERS the power of sale and the authority to assign the security deed. Smith v. Saxon Mortg., 446 Fed.Appx. 239 (11th Cir. 2011) (per curiam). Additionally, several courts have upheld the validity of MERS exercising foreclosure rights as grantee and nominee for the lender. Nicholson v. OneWest Bank, 2010 WL 2732325 at *4 (N.D. Ga. April 20, 2010) ("[T]he nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have a beneficial interest in the note secured by the mortgage."); LaCosta v. McCalla Raymer, LLC, 2011 WL 166902, *5 (N.D. Ga. January 18, 2011); Howard v. Mortgage Electronic Registration Systems, Inc., 2012 WL 3582586, *5-6 (N.D. Ga. August 17, 2012); Puente v. CitiMortgage, Inc., 2012 WL 4335997 at *4 (N.D. Tex. August 29, 2012) ("[T]he fact that the note and deed may have been 'split' does not affect either MERS' right to foreclose under the deed or MERS' right to assign its rights . . . under the deed.").

unsecured. However, if the MERS transfer was avoided, MERS would remain grantee and nominee for the FDIC, and then would act in the same capacity for Deutsche after the FDIC's February 2010 Assignment. The only effect the June 1, 2009 MERS Assignment had was to divest MERS of its grantee and nominee status under the Security Deed.

I hold that Defendants are entitled to summary judgment as to Plaintiff's preference action. No genuine dispute of material fact exists here. The Court has reviewed Plaintiff's assertions of what he believes to be the disputed facts; however, the Court finds each of the disputes listed regarding the preference claim to be immaterial. For example, one fact Plaintiff lists as disputed is Defendant's Fact #5 which states:

> The Security Deed was subsequently transferred by assignment (the "Assignment") from Defendant MERS to IndyMac Federal Bank, FSB (hereafter, "IndyMac Federal Bank") on May 19, 2009 and the Assignment was recorded at 9:35 a.m. on the real estate records of Chatham County, Georgia records at Deed Book 351U, Page 21.

As support for Defendant's Fact #5, Defendants cite the Complaint, two exhibits, and the affidavit by Charles Boyle, Vice President of OneWest. A.P. Dckt. Nos. 93-2, 107.

Plaintiff disputes Defendant's Fact #5 because "affiant Charles Boyle has not been qualified as a legal expert and may not opine as to the legal effect of the matters set forth in Defendants' Fact #5 . . . ." A.P. Dckt. No. 107 at 3. However, Plaintiff also states that

it is undisputed that the Complaint, Boyle Affidavit, and exhibits cited contain the stated language. Id. at 3-4. Plaintiff's dispute is of a legal nature, rather than a factual one. The assignment from MERS to IndyMac Federal is in the record, and the Court can determine its legal effect regardless of whether Boyle has been qualified as a legal expert.

Plaintiff has pointed to no disputed fact material to the preference action, and the Court holds that Defendants are entitled to a judgment as a matter of law. Therefore, the Court grants summary judgment in favor of Defendants as to Plaintiff's preference claim.

## II. RESPA Claim

Defendants move for summary judgment as to Plaintiff's RESPA claim. Plaintiff's claim alleges that he is entitled to damages because Defendants violated RESPA by failing to respond to Plaintiff's Qualified Written Requests within the time limits prescribed by the statute. See 12 U.S.C. § 2605(e). The Court finds that summary judgment should be denied because there are genuine disputes of material fact with regard to the adequacy of Defendants' response to the QWRs, as well as to the damages element of Plaintiff's claim.

Plaintiff must show four elements to succeed on his RESPA claim: (1) the defendant is a loan servicer under the statute; (2) the plaintiff sent a qualified written request consistent with the requirements of the statute; (3) the defendant failed to respond adequately within the statutorily required days; and (4) the plaintiff has suffered actual or statutory

damages. <u>Jones v. Vericrest Financial, Inc.</u>, 2011 WL 7025915 at *15 (N.D. Ga. December 7, 2011); *see also* <u>Frazile v. EMC Mortg. Corp.</u>, 382 Fed.Appx. 833, 836 (11th Cir. 2010) (an allegation of damages is a necessary element of any claim under § 2605).

A "qualified written request" is a written correspondence from the borrower to the servicer (other than notice on a payment coupon or other medium supplied by the servicer) that: (1) "includes, or otherwise enables the servicer to identify, the name and account of the borrower," and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(b).

Upon receipt of a QWR, the servicer must provide a written response acknowledging receipt of the correspondence within twenty days "unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). Additionally, within sixty days after receiving a Qualified Written Request, a servicer must:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> > (i) to the extent applicable, a statement of the

reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

     (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

     (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

     (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2). If a servicer fails to comply with the requirements of § 2605(e), the servicer is liable to the borrower for any actual damages resulting from the failure to comply and for any additional damages, not exceeding $1,000.00, that the court may grant if there is a showing of a pattern or practice of noncompliance with the requirements of the section. 12 U.S.C. § 2605(f)(1).

Courts have interpreted "pattern or practice" within the standard meaning of the words. McLean v. GMAC Mortgage Corp., 595 F.Supp.2d 1360, 1365 (S.D. Fla. 2009) (failure to respond to QWRs on two occasions insufficient to support a "pattern or practice" of noncompliance; In re Tomasevic, 273 B.R. 682, 686-87 (Bankr. M.D. Fla. 2002) (failure to respond to one QWR was not a "pattern or practice"); Ploog v. Homeside Lending, Inc., 209 F.Supp.2d 863, 869 (N.D. Ill. 2002) (failure to respond to five QWRs was

sufficient to constitute a "pattern or practice").

Plaintiff has produced copies of five separate letters, which appear to meet the threshold requirements of 12 U.S.C. § 2605(e)(1)(b). Plaintiff also has produced the affidavits of both Debtor and Debtor's Attorney, Murphy Cooper, who attest to mailing these letters properly. Cooper Affidavit, A.P. Dckt. No. 107-1 at 2-3; Debtor Affidavit, A.P. Dckt. No. 107-2 at 2-3. Defendant OneWest admits only to receiving the fifth letter, dated July 27, 2009. *See* A.P. Dckt. No. 113 at 37. OneWest responded to the July 27, 2009 letter, seeking Debtor's authorization for the release of the requested information on August 3, 2009. Boyle Affidavit, A.P. Dckt. No. 93-3 at 6-7. OneWest claims it did not receive the other letters, yet in May 2009 sent Cooper two Authorization Forms identical in substance to the August 3, 2009 Authorization Form. *See* A.P. Dckt. No. 93-8; *see also* Boyle Affidavit, A.P. Dckt. No. 93-3 at 7. Both May 2009 Authorization Forms referenced receiving a RESPA QWR from Cooper on behalf of a customer and referenced Debtor's loan number. A.P. Dckt. Nos. 88-4, 88-5. These Authorization Forms were dated less than a month after Cooper's April 2009 QWRs. Id. In light of these documents, OneWest's denial of receipt of a QWR prior to July 27, 2009, is dubious at best.

As the Eleventh Circuit has noted, "[t]he common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee. This 'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail." *In re* Farris, 365 Fed.Appx.

198, 199 (11th Cir. 2010). Taking this rebuttable presumption together with the summary judgment standard that the Court must view the facts in a light most favorable to Plaintiff, the Court finds there to be a genuine dispute of fact here.

This dispute of fact is material as to (1) the adequacy of Defendants' response to a QWR, (2) whether there is a pattern or practice of noncompliance, and (3) actual damages. The damages element is particularly important here. In order to prove its RESPA claim, Plaintiff must show that Defendants' failure to respond to Plaintiff's QWRs caused Plaintiff to suffer actual or statutory damages. Defendants note in their Memorandum in Support of their Motion for Summary Judgment that if the only QWR sent was the July 27, 2009 letter, then any nonresponse by Defendants could not have caused Plaintiff's alleged actual damages (namely, the bankruptcy filing) because the QWR was sent postpetition. However, if four prepetition QWRs were sent with no adequate response, then Plaintiff's claim that the bankruptcy filing was caused by Defendants's failure to respond would raise a colorable actual damages claim. Likewise, if only one QWR was sent, it is unlikely Plaintiff could show a "pattern or practice" of violations sufficient to support statutory damages.

The Court acknowledges that Defendants recently filed a Response (A.P. Dckt. No. 113) to Plaintiff's Objection (A.P. Dckt. No. 107) to Defendants' Statement of Undisputed Material Facts (A.P. Dckt. No. 93-2) purporting to show that there is no genuine dispute of material fact here. However, nothing in this response changes the Court's conclusion that genuine issues of material fact exist as to the RESPA claim in this case.

Defendants' Response may be persuasive at trial when the disputed facts and law are weighed, but does not overcome, as a matter of law, the factual disputes which I have identified.

After consideration of the record in this case, and viewing the facts in a favorable light as to the nonmoving party, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's RESPA action. The Court finds that there are genuine disputes of material fact with respect to this claim.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's preference action, and DENIED as to Plaintiff's RESPA claim. Having ruled on this matter, the Court orders the parties to file their pretrial stipulation by October 29, 2012. The Court will then set a pretrial conference by separate notice.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 15 day of October, 2012.

AO 72A
(Rev. 8/82)